FILED
2019 Jun-11  PM 08:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **EMERSON HAMILTON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 2:18-cv-933-RDP** |
| ) | |
| **JUDICIAL CORRECTION** ) | |
| **SERVICES, LLC, f/k/a JUDICIAL** ) | |
| **CORRECTION SERVICES, INC.,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

COME NOW Plaintiffs to the above-styled cause and hereby amend their Complaint to add Rodney Pope, Marcel Lawson, Hardin Bradford, and Robert Walker, as additional party plaintiffs, and to otherwise cause their Complaint to read as follows:

1.      Plaintiff Emerson Hamilton is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

2.      Plaintiff Bennie Bruno is an individual over nineteen (19) years of age and a resident of Childersburg, Alabama.

3.      Plaintiff Willie Walker is an individual over nineteen (19) years of age and a resident of Harpersville, Alabama.

4.     Plaintiff Tavell Crawford is an individual over nineteen (19) years of age and resident of Sylacauga, Alabama.

5.     Plaintiff Antonio Calhoun is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

6.     Plaintiff Lewis Mallory is an individual over nineteen (19) years of age and a resident of Childersburg, Alabama.

7.     Plaintiff Joshua Hall is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

8.     Plaintiff Earnest Norwood is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

9.     Plaintiff Corey Kelley is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

10.     Plaintiff Norwood McDonald is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

11.     Plaintiff Khomeini Datcher is an individual over nineteen (19) years of age and a resident of Harpersville, Alabama.

12.     Plaintiff Rodney Pope is an individual over nineteen (19) years of age and a resident of Vincent, Alabama.

13.     Plaintiff Marcel Lawson is an individual over nineteen (19) years of age and a resident of Vincent, Alabama.

14.     Plaintiff Hardin Bradford is an individual over nineteen (19) years of age and a resident of Harpersville, Alabama.

15.     Plaintiff Robert Walker is an individual over nineteen (19) years of age and a resident of Sylacauga, Alabama.

16.     Defendant Judicial Correction Services, LLC, formerly known as Judicial Correction Services, Inc. (hereinafter "JCS"), is a Delaware limited liability company with its principal place of business located in Atlanta, Georgia.

17.     Defendant CHC Companies, LLC (hereinafter "CHC"), is a Delaware limited liability company with its principal place of business located in Murfreesboro, Tennessee.

18.     Defendant Correct Care Solutions, LLC (hereinafter "CCS"), is a Kansas limited liability company with its principal place of business in Murfreesboro, Tennessee.

19.     Plaintiff avers that at all relevant times, Defendants JCS, CHC, and CCS, were registered to do business in the Southern Division of the Northern District of Alabama and the acts and omissions complained of occurred in the Northern District of Alabama.

20.     Defendant CHC merged with Defendant JCS on September 30, 2011. Defendant CHC directed and controlled Defendant JCS's operations from that date through 2014.

21.     Defendant CCS purchased Defendant CHC in 2014, and directed and controlled Defendant JCS's operations from that time through at least the fall of 2015, when it discontinued Defendant JCS's operations in the State of Alabama.

**COUNT I**
**VIOLATION OF DUE PROCESS**

22.     Plaintiffs hereby adopt and incorporate paragraphs 1-21 hereinabove as if set out fully herein.

23.     Pursuant to Alabama state law, the statutory maximum probation sentence in this State is two (2) years.

24.     Each of the plaintiffs to this action was sentenced to probation, which Defendant JCS, Defendant CHC, and/or Defendant CCS extended beyond two (2) years.

25.     Specifically, Plaintiff Emerson Hamilton was continuously kept on probation by Defendants JCS and CHC for over nine (9) years, from April 8, 2004, through December 14, 2012.  The probation period was impermissibly extended numerous times by Defendant JCS from April 8, 2004 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Emerson Hamilton's probation period by over five (5) years past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Emerson Hamilton's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended

Plaintiff Emerson Hamilton's probation period beyond the statutory maximum, until at least December 14, 2012.  Plaintiff Emerson Hamilton was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

26.   Plaintiff Bennie Bruno was continuously kept on probation by Defendants JCS and CHC for approximately seven (7) years, from April 21, 2005, through August 8, 2012.   The probation period was impermissibly extended numerous times by Defendant JCS from April 21, 2005 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Bennie Bruno's probation period by over four (4) years past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Bennie Bruno's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Bennie Bruno's probation period beyond the statutory maximum, until at least August 8, 2012.  Plaintiff Bennie Bruno was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

27.   Plaintiff Willie Walker was continuously kept on probation by Defendants JCS and CHC for over six (6) years, from January 10, 2008, through January 14, 2014.  The probation period was impermissibly extended by Defendant

JCS from January 10, 2008 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Willie Walker's probation period by over one (1) year past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Willie Walker's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Willie Walker's probation period beyond the statutory maximum, until January 14, 2014.  Plaintiff Willie Walker was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

29.    Plaintiff Antonio Calhoun was continuously kept on probation by Defendants JCS, CHC and CCS for approximately six (6) years, from February 12, 2009, through at least February 5, 2015.  The probation period was impermissibly extended by Defendant JCS from February 12, 2009, through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Antonio Calhoun's probation period by over six (6) months past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Antonio Calhoun's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Antonio Calhoun's probation period beyond the statutory maximum, until

2014, when JCS and CHC merged with CCS.  At that time, CCS exercised control over JCS to further impermissibly extend Plaintiff Antonio Calhoun's probation period, and/or Defendant JCS itself impermissibly extended Plaintiff Antonio Calhoun's probation period beyond the statutory maximum, until February 5, 2015. Plaintiff Antonio Hamilton was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

30.    Plaintiff Tevell Crawford was continuously kept on probation by Defendants JCS, CHC and CCS for over nine (9) years, from August 11, 2005, through at least October 20, 2014.   The probation period was impermissibly extended by Defendant JCS from August 11, 2005, through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Tevell Crawford's probation period by over four (4) years past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Tevell Crawford's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Antonio Calhoun's probation period beyond the statutory maximum, until 2014, when JCS and CHC merged with CCS.  At that time, CCS exercised control over JCS to further impermissibly extend Plaintiff Tevell Crawford's probation period, and/or Defendant JCS itself impermissibly extended Plaintiff Tevell

Crawford's probation period beyond the statutory maximum, until at least October 20, 2014. Plaintiff Tevell Crawford was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

31.     Plaintiff Lewis Mallory was continuously kept on probation by Defendants JCS and CHC for over eight (8) years, from May 12, 2005, through February 21, 2014. The probation period was impermissibly extended by Defendant JCS from May 12, 2005 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC. By that time, JCS had impermissibly extended Plaintiff Lewis Mallory's probation period by over four (4) years past the statutory maximum. Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Lewis Mallory's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Lewis Mallory's probation period beyond the statutory maximum, until February 21, 2014. Plaintiff Lewis Mallory was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

32.     Plaintiff Joshua Hall was continuously kept on probation by Defendants JCS and CHC for over eight (8) years, from November 10, 2005, through May 7, 2014. The probation period was impermissibly extended by Defendant JCS from

November 10, 2005 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Joshua Hall's probation period by over almost four (4) years past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Joshua Hall's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Joshua Hall's probation period beyond the statutory maximum, until May 7, 2014.  Plaintiff Joshua Hall was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

33.    Plaintiff Earnest Norwood was continuously kept on probation by Defendants JCS and CHC for over four and a half (4.5) years, from October 11, 2007, through at least July 30, 2012.  The probation period was impermissibly extended by Defendant JCS from October 11, 2007 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Earnest Norwood's probation period by over almost two (2) years past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Earnest Norwood's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Earnest Norwood's probation period beyond the statutory

maximum, until at least July 30, 2012.  Plaintiff Earnest Norwood was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

34.    Plaintiff Corey Kelley was continuously kept on probation by Defendants JCS and CHC for over three and a half (3.5) years, from November 20, 2008, through at least April 9, 2012.  The probation period was impermissibly extended by Defendant JCS from November 20, 2008 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Corey Kelley's probation period by over over ten (10) months past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Corey Kelley's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Corey Kelley's probation period beyond the statutory maximum, until at least April 9, 2012.  Plaintiff Corey Kelley was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

35.    Plaintiff Norwood McDonald was continuously kept on probation by Defendant JCS for almost five (5) years, from February 22, 2007, through January 3, 2012, almost three (3) years past the statutory maximum.  Plaintiff Norwood

McDonald was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

36.     Plaintiff Khomeini Datcher was continuously kept on probation by Defendants JCS, CHC and CCS for over eight (8) years, from August 9, 2006, through November 19, 2014.  The probation period was impermissibly extended by Defendant JCS from August 9, 2006, through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Khomeini Datcher's probation period by over three (3) years past the statutory maximum.  Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Khomeini Datcher's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Khomeini Datcher's probation period beyond the statutory maximum, until 2014, when JCS and CHC merged with CCS.  At that time, CCS exercised control over JCS to further impermissibly extend Plaintiff Khomeini Datcher's probation period, and/or Defendant JCS itself impermissibly extended Plaintiff Khomeini Datcher's probation period beyond the statutory maximum, until November 19, 2014.  Plaintiff Khomeini Datcher was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

37.   Plaintiff Rodney Pope was continuously kept on probation by Defendant JCS for at least four and a half (4.5) years, from December 12, 2006, through at least April 14, 2011, at least two and a half (2.5) years past the statutory maximum.  Plaintiff Rodney Pope was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

38.   Plaintiff Hardin Bradford was continuously kept on probation by Defendants JCS and CHC for over seven and a half (7.5) years, from March 8, 2005, through at least January 14, 2013.  The probation period was impermissibly extended by Defendant JCS from March 8, 2005 through September 30, 2011, at which time Defendant JCS merged with Defendant CHC.  By that time, JCS had impermissibly extended Plaintiff Hardin Bradford's probation period by over four (4) years past the statutory maximum.   Thereafter, CHC exercised control over JCS to further impermissibly extend Plaintiff Hardin Bradford's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Hardin Bradford's probation period beyond the statutory maximum, until at least January 14, 2013.   Plaintiff Hardin Bradford was never informed of the modifications to his probation sentence; nor was he ever provided with notice of these extensions; nor was he provided with any opportunity for a hearing.

39.     Plaintiff Robert Walker was continuously kept on probation by Defendants JCS and CHC for over twenty-six (26) months, from December 8, 2011 through February 9, 2014.  As JCS had already merged with CHC at the time the two year statutory maximum probation period expired, CHC exercised control over JCS to impermissibly extend Plaintiff Robert Walker's probation period beyond the statutory maximum, and/or Defendant JCS itself impermissibly extended Plaintiff Robert Walker's probation period beyond the statutory maximum, until February 9, 2014.  Plaintiff Robert Walker was never informed of any modification to his probation sentence; nor was he ever provided with notice of any such extension; nor was he provided with any opportunity for a hearing.

40.     Defendants JCS, CHC, and CCS contracted with the municipalities of Harpersville, Childersburg, Sylacauga, Talladega, Hoover, Lincoln, and Calera to impose the impermissibly lengthy probations set out in paragraphs 26-39 hereinabove.   The imposition of probation periods is a traditional function exclusively within the State's prerogative.

41.     The plaintiffs had a liberty interest in being released from probation no later than the end of the two (2) year statutory maximum probation period.  The defendants' failure to release the plaintiffs from probation at the end of that time period significantly imposed on the plaintiffs' liberty, typically including but not limited to (i) not changing their residence or employment without first notifying their

probation officer, (ii) avoiding "injurious or vicious habits," (iii) working diligently at a lawful occupation, unless a full time student, (iv) truthfully answering all inquiries by the defendants and complying with all instructions by the defendants, with the plaintiff suffering the threat of arrest if the defendants deemed any of these conditions to have been violated.

42.    Each of the plaintiffs identified in paragraphs 26-39 above were charged fees by JCS, CHC, and/or CCS, continuously after the expiration of the two (2) year statutory maximum probation period.

43.    Each of the plaintiffs identified in paragraphs 26-39 above were jailed, after the expiration of the two year statutory maximum probation period, for their mere failure to pay "probation fees" charged by JCS, CHC, and/or CCS during that time period after the expiration of the statutory maximum probation period.

WHEREFORE, Plaintiffs Emerson Hamilton, Bennie Bruno, Willie Walker, Antonio Calhoun, Tavell Crawford, Lewis Mallory, Joshua Hall, Earnest Norwood, Corey Kelley, Norwood McDonald, Khomeini Datcher, Rodney Pope, Hardin Bradford, and Robert Walker demand compensatory and punitive damages from Defendants Judicial Correction Services, LLC, f/k/a Judicial Correction Services, Inc., CHC Companies, LLC, and Correct Care Solutions, LLC, in an amount to be determined by a struck jury, together with interest from the respective dates of injury and the costs of this proceeding.

## COUNT II
## CIVIL CONSPIRACY WITH THE
## HARPERSVILLE MUNICIPAL COURT

44.     Plaintiffs hereby adopt and incorporate paragraphs 1-43 hereinabove as if set out fully herein.

45.     Defendants JCS and CHC conspired with the Harpersville Municipal Court to violate the rights of the plaintiffs established by (a) *Bearden v. Georgia*, 461 U.S. 660 (1983), (b) Alabama law, and (c) the Sixth Amendment of the United States Constitution, thereby subjecting themselves to liability under 42 U.S.C. § 1983.

46.     At the insistence and specific request of JCS, CHC, and CCS, the Harpersville Municipal Court issued arrest warrants for Plaintiffs Bennie Bruno, Willie Walker, Corey Kelley, Marcel Lawson, and Hardin Bradford, for the alleged charge of "failure to obey a court order" ("FTOCO")—a "charge" that is not supported by any federal, state, or municipal statute, or any other authority—without and in lieu of conducting an indigency hearing for these plaintiffs, in violation of their rights under *Bearden* and Alabama law.

47.     Additionally, as evidenced in part by the printed "acknowledgement of waiver of counsel" forms created by the defendants as opposed to the Harpersville Municipal Court, and routinely used by the defendants as part of the probation forms Defendants foisted upon the plaintiffs, it is apparent that the defendants and the

Harpersville Municipal Court agreed and conspired to deny the plaintiffs the assistance of counsel before the Harpersville Municipal Court ordered the plaintiffs imprisoned, violating the plaintiffs' right to counsel under the Sixth Amendment of the United States Constitution.

48.     Specifically, at the insistence and specific request of JCS and/or CHC, the Harpersville Municipal Court issued an arrest warrant for Plaintiff Bennie Bruno on May 11, 2012, for his failure to pay "probation fees," on the bogus charge of "FTOCO."   An individual employed by JCS and/or CHC was present at the Harpersville Municipal Court at the time the warrant was issued, and specifically requested its issuance.  Plaintiff Bennie Bruno was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

49.     Pursuant to an order issued by the Harpersville Municipal Court, Plaintiff Bennie Bruno was arrested and spent several days in jail.  He was not afforded an opportunity to receive assistance from an attorney prior to being jailed.

50.     Similarly, at the insistence and specific request of JCS, the Harpersville Municipal Court issued an arrest warrant for Plaintiff Willie Walker in the fall of 2009, for his failure to pay "probation fees," on the bogus charge of "FTOCO."  An individual employed by JCS was present at the Harpersville Municipal Court at the time the warrant was issued, and specifically requested its issuance.  Plaintiff Willie

Walker was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

51.     Thereafter and pursuant to the warrant described in paragraph 50 above, Plaintiff Willie Walker was arrested in his home and placed in the Shelby County jail.  He was not afforded an opportunity to receive assistance from an attorney prior to being jailed.  He was kept in jail until May 2010 due only to his inability to pay.

52.     Likewise, at the insistence and specific request of JCS and/or CHC, the Harpersville Municipal Court issued an arrest warrant for Plaintiff Corey Kelley in May 2012, for his failure to pay "probation fees," on the bogus charge of "FTOCO." An individual employed by JCS and/or CHC was present at the Harpersville Municipal Court at the time the warrant was issued, and specifically requested its issuance.  Plaintiff Corey Kelley was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

53.     Thereafter and pursuant to the warrant described in paragraph 52 above, Plaintiff Corey Kelley was arrested and jailed, where he remained for several days. He was not afforded an opportunity to receive assistance from an attorney prior to being jailed.

54.    At the insistence and specific request of JCS, the Harpersville Municipal Court issued an arrest warrant for Plaintiff Marcel Lawson on February 11, 2011, for his failure to pay "probation fees," on the bogus charge of "FTOCO." An individual employed by JCS was present at the Harpersville Municipal Court at the time the warrant was issued, and specifically requested its issuance.  Plaintiff Marcel Lawson was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

55.    At the insistence and specific request of JCS, the Harpersville Municipal Court issued an arrest warrant for Plaintiff Hardin Bradford on May 12, 2006, for his failure to pay "probation fees," on the bogus charge of "FTOCO."  An individual employed by JCS was present at the Harpersville Municipal Court at the time the warrant was issued, and specifically requested its issuance.  In JCS's notes, a JCS employee identified as "JCULBERSON" states flatly, "I PLACED THE DEF IN WARRANT."  Plaintiff Hardin Bradford was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

56.    At the insistence and specific request of JCS, the Harpersville Municipal Court issued another arrest warrant for Plaintiff Hardin Bradford on September 27, 2006, again for his failure to pay "probation fees," again on the bogus

charge of "FTOCO."    An individual employed by JCS was present at the Harpersville Municipal Court at the time the warrant was issued, and specifically requested its issuance.    In JCS's notes, a JCS employee identified as "CCULBERSON" states "AM PLACING DEF INTO WARRANT STATUS." Plaintiff Hardin Bradford again was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

57.    Plaintiff Hardin Bradford was ultimately arrested by the City of Harpersville and jailed for his inability to pay JCS's probation fees on May 21, 2009. He was not afforded an opportunity to receive assistance from an attorney prior to being jailed.

WHEREFORE, Plaintiffs Bennie Bruno, Willie Walker, Corey Kelley, Marcel Lawson, and Hardin Bradford demand compensatory and punitive damages from Defendants Judicial Correction Services, LLC, f/k/a Judicial Correction Services, Inc., and CHC Companies, LLC, in an amount to be determined by a struck jury, together with interest from the respective dates of injury and the costs of this proceeding.

## COUNT III
## CIVIL CONSPIRACY WITH THE
## CHILDERSBURG MUNICIPAL COURT

58.     Plaintiffs hereby adopt and incorporate paragraphs 1-57 hereinabove as if set out fully herein.

59.     Defendants JCS and CHC conspired with the Childersburg Municipal Court to violate the rights of the plaintiffs established by (a) *Bearden v. Georgia*, 461 U.S. 660 (1983), (b) Alabama law, and (c) the Sixth Amendment of the United States Constitution, thereby subjecting themselves to liability under 42 U.S.C. § 1983.

60.     At the insistence and specific request of JCS, CHC, and CCS, the Childersburg Municipal Court issued arrest warrants for Plaintiffs Antonio Calhoun and Lewis Mallory, for the alleged charge of "failure to obey a court order" ("FTOCO")—a "charge" that is not supported by any federal, state, or municipal statute, or any other authority—without and in lieu of conducting an indigency hearing for these plaintiffs, in violation of their rights under *Bearden* and Alabama law.

61.     Additionally, as evidenced in part by the printed "acknowledgement of waiver of counsel" forms created by the defendants as opposed to the Childersburg Municipal Court, and routinely used by the defendants as part of the probation forms Defendants foisted upon the plaintiffs, it is apparent that the defendants and the

Childersburg Municipal Court agreed and conspired to deny the plaintiffs the assistance of counsel before the Childersburg Municipal Court ordered the plaintiffs imprisoned, violating the plaintiffs' right to counsel under the Sixth Amendment of the United States Constitution.

62.    Specifically, at the insistence and specific request of JCS, the Childersburg Municipal Court issued an arrest warrant for Plaintiff Antonio Calhoun in May 2009, for his failure to pay "probation fees," on the bogus charge of "FTOCO."   An individual employed by JCS was present at the Childersburg Municipal Court at the time the warrant was issued, and specifically requested its issuance.  Plaintiff Antonio Calhoun was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

63.    At the insistence and specific request of JCS, the Childersburg Municipal Court issued an arrest warrant for Plaintiff Lewis Mallory for his failure to pay "probation fees," on the bogus charge of "FTOCO."  An individual employed by JCS was present at the Childersburg Municipal Court at the time the warrant was issued, and specifically requested its issuance.  Plaintiff Lewis Mallory was not afforded any opportunity to explain his indigency or his inability to pay the unlawful "probation fees" charged by the defendants prior to the warrant's issuance.

64.    Thereafter, and pursuant to the warrant described in paragraph 63 above, Plaintiff Lewis Mallory was arrested and jailed.  He was not afforded an opportunity to receive assistance from an attorney prior to being jailed.

WHEREFORE, Plaintiffs Antonio Calhoun and Lewis Mallory demand compensatory and punitive damages from Defendants Judicial Correction Services, LLC, f/k/a Judicial Correction Services, Inc., and CHC Companies, LLC, in an amount to be determined by a struck jury, together with interest from the respective dates of injury and the costs of this proceeding.

## COUNT IV
## CIVIL CONSPIRACY WITH THE
## SYLACAUGA CITY COURT

65.    Plaintiffs hereby adopt and incorporate paragraphs 1-64 hereinabove as if set out fully herein.

66.    Defendants JCS and CHC conspired with the Sylacauga City Court to violate the rights of the plaintiffs established by (a) *Bearden v. Georgia*, 461 U.S. 660 (1983), (b) Alabama law, and (c) the Sixth Amendment of the United States Constitution, thereby subjecting themselves to liability under 42 U.S.C. § 1983.

67.    At the insistence and specific request of JCS, CHC, and CCS, the Sylacauga City Court also issued arrest warrants for the plaintiffs for the alleged charge of "failure to obey a court order" ("FTOCO")—a "charge" that is not supported by any federal, state, or municipal statute, or any other authority—without

and in lieu of conducting an indigency hearing for these plaintiffs, in violation of their rights under *Bearden* and Alabama law.

68.    Additionally, as evidenced in part by the printed "acknowledgement of waiver of counsel" forms created by the defendants as opposed to the Sylacauga City Court, and routinely used by the defendants as part of the probation forms Defendants foisted upon the plaintiffs, it is apparent that the defendants and the Sylacauga City Court agreed and conspired to deny the plaintiffs the assistance of counsel before the Sylacauga City Court ordered the plaintiffs imprisoned, violating the plaintiffs' right to counsel under the Sixth Amendment of the United States Constitution.

WHEREFORE, Plaintiffs demand compensatory and punitive damages from Defendants Judicial Correction Services, LLC, f/k/a Judicial Correction Services, Inc., and CHC Companies, LLC, in an amount to be determined by a struck jury, together with interest from the respective dates of injury and the costs of this proceeding.

## COUNT V
## MONEY HAD AND RECEIVED

69.    Plaintiffs hereby adopt and incorporate paragraphs 1-68 hereinabove as if set out fully herein.

70.    JCS, CHC and CCS charged the plaintiffs monthly fees if they did not pay the fines and costs claimed for a city charge within a certain number of days.

Pursuant to its contracts with the municipalities at issue in this case, including Harpersville, Childersburg, Sylacauga, Talladega, Hoover, Lincoln, and Calera the defendants charged a $10 setup fee and charged an additional $35-$45 monthly fee for each month the person was on the defendants' "probation."

71.     JCS, CHC and CCS also determined and assessed a minimum, monthly fee each person had to pay it to "stay current."

72.     When the plaintiffs made payments to the defendants, their employees decided the amount it would keep and the amount it would send to the respective municipalities set out in paragraph 70, to reduce that particular plaintiff's city debt.

73.     These monthly fees were not charged to those who immediately paid the city fines and costs when adjudicated or to people who paid the fines online or to people who were allowed to make periodic payments to the city.

74.     Neither the defendants nor the cities had legal authority to charge these fees.

75.     Charging monthly fees for post-conviction fine collection is beyond the authority of the municipal court which is required by Alabama statute to uniformly process traffic infractions and penalties for misdemeanors in accordance with specified maximum fines.  *See* ALA. CODE § 12-14-8.  The defendants' fees are neither justified as court costs nor fines.

76.     These extra fees resulted in people being charged amounts that exceeded statutory maximums for the city "crime" for which the fees were assessed.

77.     The defendants unlawfully charged and collected these fees which were also paid under duress to avoid arrest and jail.

78.     The defendants therefore owe the plaintiffs for money had and received from the payment of these illegal charges.

WHEREFORE, Plaintiffs demand compensatory and punitive damages from Defendants Judicial Correction Services, LLC, f/k/a Judicial Correction Services, Inc., CHC Companies, LLC, and Correct Care Solutions, LLC, in an amount to be determined by a struck jury, together with interest from the respective dates of injury and the costs of this proceeding.

## JURY DEMAND

Plaintiffs demand a trial by struck jury.

Respectfully submitted this 11th day of June, 2019.

/s/ Lloyd W. Gathings
Lloyd W. Gathings (GAT001)
William A. Lattimore (LAT023)

**OF COUNSEL:**
GATHINGS LAW
2204 Lakeshore Drive, Suite 406
Birmingham, Alabama 35209
Telephone: (205) 322-1201
Facsimile: (205) 322-1202
LGathings@gathingslaw.com
WLattimore@gathingslaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 11th day of June, 2019, I filed the foregoing motion using the Northern District of Alabama's CM/ECF electronic filing system, which will automatically serve a true and accurate copy of the foregoing on each of the following counselors of record in this matter:

Michael L. Jackson, Esq.
Larry S. Logsdon, Esq.
Wesley K. Winborn, Esq.
Wallace, Jordan, Ratliff & Brandt, LLC
P.O. Box 530910
Birmingham, AL 35253

Wilson F. Green, Esq.
Fleenor & Green, LLP
1657 McFarland Blvd. N., Ste. G2A
Tuscaloosa, AL 35406

F. Lane Finch, Jr., Esq.
Brian Richardson, Esq.
Swift Currie McGhee & Hiers, LLP
2 North 20th Street, Suite 1405
Birmingham, AL 35203

*/s/ Lloyd W. Gathings*
OF COUNSEL